## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES HOFT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:24-CV-1304 HEA |
| | ) | |
| WILLIAM CHARLES BUNDREN, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs TGP Communications, LLC ("TGP") and James Hoft's Motion for Preliminary Injunction against Defendants Bundren Law Group, PLLC ("BLG") and William Charles Bundren. (ECF No. 11). Also before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue or, alternatively, Motion to Transfer Venue to the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404. (ECF No. 19). For the reasons that follow, the Court grants Defendants' Motion to Transfer. Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss are denied as moot.

## I.    Background and Facts

The case arises out of an attorney-client relationship, and at its core, it is a fee dispute.[1]  On June 14, 2022, Ruby Freeman and Wandrea Arshaye Moss brought suit against TGP, James Hoft, and Joseph Hoft, who is James's twin brother, (collectively "the Hoft Brothers") in the Circuit Court of St. Louis City, Missouri, Twenty-Second Judicial Circuit. *Freeman, et al. v. Hoft, et al*., Case No. 2122-CC-09815-01 ("Freeman Moss Lawsuit").   Mss. Freeman and Moss were election workers in Fulton County, Georgia, and they alleged that TGP and the Hoft Brothers had published defamatory information about them on the Gateway Pundit website regarding their handling of ballots during the November 2020 presidential election.

TGP and the Hoft Brothers were sued in Missouri, but it is unclear where the Hoft Brothers were domiciled when the Freeman Moss Lawsuit was filed.  Currently James and Joseph Hoft are domiciled in Florida, and they have been for at least two years.   TGP was organized as a limited liability company in Missouri, but its principal place of business is in Florida, and its sole member is James Hoft, who is a citizen of Florida.

---

[1]The undersigned held an evidentiary hearing in this matter on December 6, 2024, at which Plaintiffs' attorney, Jonathan Burns, testified.  The parties also submitted into evidence a number of written exhibits.  The Court's factual findings are based on careful review of the complete record.

TGP and the Hoft Brothers did have insurance that covered loss from the lawsuit. Atlantic Specialty Insurance Company ("ASIC") has issued TGP a Media Professional Liability Policy ("Insurance Policy") that covered, at least in part, claims in the Freeman Moss Lawsuit.[2] The Insurance Policy has a $2,000,000.00 limit of liability, and under its terms, defense costs are part of and not in addition to the liability limits of liability. "The underwriter will have no obligation to pay judgments, settlements, or defense costs once the applicable limit of liability is exhausted by defense costs of loss." (ECF No. 44, Ex. 28 at 1).

Attorney Marc Randazza was initially designated to represent TGP and the Hoft Brothers in the Freeman Moss Lawsuit. But sometime in December 2023 or January 2024, the Hoft Brothers asked that ASIC agree to allow them to use Defendant Bundren as lead counsel, which the insurer did. Defendant Bundren is the managing partner of BLG. BLG is a Texas law firm organized pursuant to the laws of the State of Texas with its principal and only place of business in Collin County, Texas. Defendant Bundren resides in Collin County, Texas, and is an attorney licensed by the State Bar of Texas. Defendant Bundren is not licensed in Missouri.

---

[2] The Insurance Policy was underwritten by underwritten by ASIC, and it appears that Intact Insurance Group USA LLC d/b/a Intact Insurance Specialty Solutions ("Intact") administered claims under the Insurance Policy.

In connection with this representation, the TGP and the Hofts and BLG executed a retainer agreement, which is dated January 10, 2024. ("Retainer Agreement"). Under the terms of the Retainer Agreement, all BLG invoices were to be submitted to TGP, the Hoft Brothers, and the insurer on a on monthly basis by email. (ECF No. 23, Ex. 4 at 10). Further, TGP and the Hoft Brothers are jointly and severally responsible to pay BLG all amounts for all the invoices that were not paid by the insurer. (*Id.* at 3). The Retainer Agreement also provided that ASIC and One Beacon Professional Insurance "shall be jointly and severally responsible for payment of attorney's fees and costs billed by [BLG] for the defense of [TGP and the Hoft Brothers] in the [Freeman Moss Lawsuit] … ." (*Id.*) Payment on all invoices were due within 30 days of receipt, unless otherwise noted by BLG in writing or email. (*Id.* at 8). "Failure to pay an Invoice upon receipt may result in [BLG] withdrawing all legal representation of [the TGP Defendants] in the legal matter." (*Id.* at 8).

The Retainer Agreement also contained a forum selection clause, which provided:

> This letter agreement shall be construed in accordance with the laws of the State of Texas, and all obligations of the parties are performable in Collin County, Texas. This agreement can be enforceable by any court of competent jurisdiction in Collin County, Texas.

(*Id.* at 10)

On January 15, 2024, attorney Jonathon Burns filed a motion for Defendant Bundren to appear a *pro hac vice* in the Freeman Moss Lawsuit.  The motion was granted, but Defendant Bundren is not listed as an attorney of record on the docket in Case No. 2122-CC-09815-01.  *See* https://www.courts.mo.gov/cnet/cases (last visited July 8, 2025).

Defendant Bundren and Marc Randazza took different approaches to defending the Freeman Moss Lawsuit.  Attorney Randazza defended on First Amendment grounds, while Defendant Bundren sought to establish that the Hoft Brothers were telling the truth.  Accordingly, when he began working on the case, Defendant Bundren started by undertaking an extensive investigation and pursuing expansive discovery.  The events underlying the Freeman Moss Lawsuit took place in Fulton County, Georgia, and Defendant Bundren provided a detailed affidavit in which he attests that he conducted investigations and sought discovery in Georgia, as well as in Texas, Washington, D.C., Virginia, Maryland, Louisiana, and New York.  He also attests that he performed legal for the Freeman Moss Lawsuit in his office in Texas.  He attests that he attended, although he did not participate in, four hearings in Missouri, but that he performed all other legal work for TGP and the Hoft Brothers outside of Missouri.

Beginning in February 2024, BLG submitted a number of invoices for attorney's fees.  Defendant Bundren prepared the invoices in Texas, and they were

sent by email to the insurer and copied to the Hoft Brothers.  It appears from the record that only one of the invoices was paid.  On April 19, 2024, Intact paid BLG $90,912.03 out of proceeds from the Insurance Policy.  (ECF No 44, Ex. 13 at 2).

On April 24, 2024, TGP filed for bankruptcy in Florida.  The bankruptcy petition was dismissed as a bad faith filing on July 25, 2024.  *See In re TGP Commc'ns, LLC*, 662 B.R. 795 (Bankr. S.D. Fla. 2024).  The Honorable Mindy A. Mora wrote the following in her Memorandum Opinion and Order dismissing the petition,

> TGP's primary cash flow concern is the rapid depletion of the benefits payable under the Policy. Once the Policy limits are reached, TGP will have to look to other sources of revenue to pay its legal bills, and, potentially, judgments in the State Court Plaintiffs' favor. That possibility is the driving force behind TGP's bankruptcy filing … .

*Id.* at 807.

In May, July and August 2024, BLG made email inquiries about the status of the outstanding invoices.  The email inquiries were sent to the insurer and copied to Joseph Hoft, among others.  (ECF No. 4, Ex. 11 at 2, Ex. 17 at 2).  A senior claim consultant at Intact responded that the invoices were under review.  (ECF No. 44, Ex. 12 at 5).

On August 19, 2024, BLG again inquired about the unpaid invoices, and the senior claim consultant at Intact asked counsel for TGP, Jonathan Burns, how she should respond.  (ECF No. 44, Ex. 18 at 1).  It is not clear from the record whether

BLG received a response to its inquiry, but the firm received no further payment on the invoices.

As of September 11, 2024, the Hoft Brothers were unequivocally aware that there were unpaid BLG invoices totaling more than $500,000.  (EFC No. 44, Ex. 22 at 2).  Further, TCP and the Hoft Brothers knew that subtracting BLG's unpaid legal bills from the remaining amount of Insurance Policy left approximately $700,000 in benefits.[3]  Mr. Burns testified that up until the date of the mediation, which took place on September 16, 2024, the insurer had assured TGP and the Hoft Brothers that approximately $1.2 million remained in the Insurance Policy benefits.  This testimony is not credible.  Further, his testimony that an insurance representative told him on the day of mediation that Defendant Bundren was interfering with the settlement is also not credible.

A mediation in the Freeman Moss Lawsuit took place on September 16, 2024. Defendant Bundren neither attended the mediation nor was involved in the settlement negotiations in any way.  On September 20, 2024, TGP and the Hoft Brothers settled with the plaintiffs in the Freeman Moss Lawsuit.  Including the cost of defense, TGP and the Hoft Brothers agreed to pay an amount that was above the remaining Insurance Policy benefits.  In other words, proceeds from the Insurance

---

[3]It appears that in addition to approximately $90,000 that the paid to BLG, the Insurance Policy had paid out approximately $500,000 in attorney's fees to the Randazza Legal Group, PLLC, and the insurer had made payment in another suit as well.

Policy would not cover the settlement amount <u>and</u> the outstanding legal invoices from BLG. After reaching the settlement, TGP and the Hoft Brothers demanded that Intact make the full amount of the benefits remaining on the Insurance Policy available to them for settling the Freeman Moss Lawsuit, and that it not issue payment to BLG for the outstanding invoices.

There is no evidence that Defendant Bundren was aware that the Freeman Moss Lawsuit had been settled or that he had knowledge of the terms of the settlement. On September 24, 2024, Defendant Bundren sent an email to Intact, which was copied to the Hoft Brothers, in which he wrote the following:

> This is a follow up to my two previous emails to you regarding payment of past due invoices owned to Bundren Law Group, PLLC. This is my third request for payment and an explanation for the delay in payment.
>
> Past due invoices owed to Bundren Law Group, PLLC have not been paid and Bundren Law Group, PLLC demands immediate payment of the past due invoices. …
>
> [The] past due amount owed to Bundren Law Group, PLLC is $512,215.50. … Bundren Law Group demands immediate payment of $512,215.50 … . Failure to make prompt payment will be deemed, inter alia, a breach of contract.
>
> Time is of the essence. Please give this your immediate attention.

(EFC No. 44, Ex. 26 at 5). There is no evidence in the record that anyone replied to this email.

On September 27, 2024, at approximately 11:00 a.m., Defendant Bundren sent an email to Joseph Hoft, which was copied to James Hoft and the senior claims consultant at Intact stating the following:

> Please make payment of the invoices in the past sue amount owed to Bundren Law Group, PLLC of $512,214.50 immediately. … Please notify me of the ACH payment amount and date so that I can track the payment with BLG's bank.
>
> Time is of the essence.  Please give this your immediate attention.

(ECF No. 44, Ex. 27 at 2).

Again, there is no evidence that anyone replied to the email.  Instead, that same day, at approximately 2:30 p.m., James Hoft and TGP filed the above-captioned cause of action against Defendants Bundren and BLG.

In their Complaint, Plaintiffs allege the hours Defendants submitted on their invoices were grossly excessive.  Plaintiffs further allege that the invoices are "replete with inflated and fraudulent time entries."  (ECF No. 1 at 3).  For relief, Plaintiffs ask that the Court declare that they are not required to pay the outstanding BLG invoices.

There is evidence in the record that James Hoft and Mr. Burns believed BLG's bills were too high, and sometime in September 2024, they completed some sort of analysis of the bills.  (ECF No. 44, Ex. 23).  Around this same time, Intact also completed a separate review of the BLG bills and concluded that a 10-20% reduction was warranted, but it estimated that even with the reduction, between $370,000 and

$400,000 remained due and owing. (ECF No. 44, Ex. 28 at 1). Notably, there is no evidence in the record that prior to filing suit, that either James Hoft or a representative from TGP – or anyone else – informed BLG or Defendant Bundren that James Hoft and TGP were disputing the amount of BLG's legal bills, or that they did not intend to pay the outstanding invoices.

### A. Suit in the Eastern District of Missouri

On September 27, 2024, Plaintiffs TGP and James Hoft filed suit against Defendants Bundren and BLG here in the Eastern District of Missouri. In Count I of their Complaint, Plaintiffs seek declaratory relief. They ask that the Court find that Defendants did not perform pursuant to the Retainer Agreement or, alternatively, to the extent Defendants did perform, Defendant's work was "excessive and unreasonable" and, therefore, non-payment by Plaintiffs or the insurer is not a breach of contract. (*Id.* at 4). Plaintiffs ask that the Court declare, pursuant to 28 U.S.C. § 2201, that "they shall not be required, as a matter of law, to pay some or all of the unpaid invoices claimed by Defendants." (*Id.* at 5). In their original Complaint, Plaintiff brought the following three additional counts against Defendants: Unfair Trade Practices in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (Count II), violations of Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, *et seq*. (Count III), and Unjust Enrichment, Constructive Trust and Disgorgement under Texas state law (Count IV).

On October 28, 2028, Plaintiffs filed an Amended Complaint as a matter of right, which is the operative Complaint in this cause of action.  Plaintiffs allege the following seven counts in their Amended Complaint:  Unfair Trade Practices in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (Count I); violations of the MMPA (Count II); Unjust Enrichment, Constructive Trust and Disgorgement under Texas common law (Count III); Tortious Interference with the Insurance Policy under Missouri common law (Count IV); Breach of Fiduciary Duty under Missouri common law (Count V); Legal Malpractice under Missouri common law (Count VI); and for Declaratory Judgment (Count VII).  Again, Plaintiffs ask that the Court declare, pursuant to 28 U.S.C. § 2201, that "they shall not be required, as a matter of law, to pay some or all of the unpaid invoices claimed by Defendants."  (ECF No. 9 at 19).  The three additional counts are based primarily on allegations regarding Defendant Bundren's conduct in a case his firm filed in Texas.

Defendants responded by filing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and (3) for lack of personal jurisdiction and improper venue.  Alternatively, Defendants move that the Court transfer this case to the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404.

**B. The Texas Lawsuit**

On October 8, 2024, BLG filed suit against TGP, James Hoft, Joseph Hoft, as well as ASIC, One Beacon Professional Insurance Group, One Beacon Professional

Insurance, Inc. (collectively "Beacon"), and Intact in state court in Collin County, Texas, *Bundren law Group, PLLC v. Atlantic Specialty Ins. Co., et al.*, 471-07421-2024 ("Texas Lawsuit").  BLG alleges ASIC, Beacon, and Intact (collectively the "Insurance Companies") issued the Insurance Policy that covered the claims in and the cost of defense of the Freeman Moss Lawsuit against TGP and the Hoft brothers.

BLG alleges that it was retained by the Insurance Companies to represent TGP and the Hoft Brothers in the Freeman Moss Lawsuit.  BLG also alleges that TGP and the Hoft Brothers entered into the Retainer Agreement, a written contract, with BLG in Collin County, Texas to pay BLG for legal services it rendered in the Freeman Moss Lawsuit and that the Insurance Companies participated in and negotiated the terms of the Retainer Agreement.  BLG also alleges that it is a third-party beneficiary to TGP's Insurance Policy.

According to BLG, it submitted invoices for legal fees and costs to the Insurance Companies, TGP, and the Hoft Brothers.  The Insurance Companies paid a portion of the invoices, but refused to pay all the invoices, resulting in a balance of $512,215.50, which remains unpaid.  BLG alleges that it made repeated demands for payment.  In the Texas Lawsuit, BLG brings claims for breach of contract under the Retainer Agreement and third-party beneficiary claims under the Insurance Policy and for promissory estoppel.

On October 8, 2024, while the Texas Lawsuit was pending in state court, BLG filed a motion for a temporary restraining order ("TRO") against the Insurance Companies to enjoin them from making any payments to any person for any reason under the Insurance Policy that would reduce the balance of funds available to pay defense costs to below $600,000.00. BLG argued that the defendants failed and refused to honor the insurance contract and the Retainer Agreement, and unless they were restrained, the Insurance Companies would deplete the Insurance Policy benefits without paying BLG's invoices. The Texas State Court entered the TRO on October 8, 2024, and set the matter for hearing on October 22, 2024.

Meanwhile on October 9, 2024, TGP removed the Texas Lawsuit to the United States District Court for the Eastern District of Texas. *Bundren Law Group, PLLC v. Atlantic Specialty Ins. Co., et al.*, 4:24-CV-900 SDJ. BLG renewed the motion for a TRO, which was granted on October 11, 2024. On October 16, 2024, TGP moved to dissolve the TRO. The district court in Texas did not grant TGP's motion to dissolve the TRO, and instead it issued an order finding that the Notice of Removal failed to adequately allege diversity jurisdiction, and it dissolved the TRO for lack of subject matter jurisdiction. The district court ordered TGP to file an amended Notice of Removal, which it did. The Texas Lawsuit is currently pending the Eastern District of Texas.

### III. Discussion

The question before the Court is where this dispute over legal representation and fees should be litigated. In their Motion for Preliminary Injunction, Plaintiffs TGP and James Hoft argue that the first-filed rule applies. They seek an order from this Court enjoining Defendants Bundren and BLG from taking any further action in the Texas Lawsuit.[4] Defendants oppose the motion for preliminary injunction and ask, among things, that the Court transfer the above-captioned case to the United States District Court for the Eastern District of Texas. Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Transfer Venue are two sides to the same coin – both motions argue for and against a specific venue where this case should be adjudicated. The Court will address the two motions together, because the legal issues are entangled and many of the relevant factors overlap.

### A. Legal Standards

#### 1. Standard for antisuit preliminary injunction

"The discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court is firmly established." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993). Ordinarily, a motion for a preliminary injunction is

---

[4]On November 13, 2024, the Court denied Plaintiffs' Motion for TRO, finding Plaintiffs had failed to establish that they were entitled to immediate relief on an expedited basis.

analyzed under the familiar four-factor test set forth in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).   However, a motion for a preliminary injunction seeking to enjoin a party from proceeding with a duplicate lawsuit in another forum, an antisuit injunction, is not analyzed under the familiar *Dataphase* test.   *Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 460 (8th Cir. 2025); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993).   The *Dataphase* factors are "inapposite, since the question has nothing to do with the merits of the underlying controversy," and the issue is where, between two courts, the case should be adjudicated.   *Nw. Airlines, Inc.*, 989 F.2d at 1004.   Instead, "a district court should apply the 'well-established' first-filed rule in assessing whether to grant an antisuit injunction." *Beber*, 140 F.4th at 459 (quoting *Nw. Airlines*, 989 F.2d at 1005).   This rule provides as follows:

> in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982), the first-filed rule should apply.

*U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir. 1990).

The first-filed rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines*, 989 F.2d at 1006. But the first-filed rule should be set aside if there are "compelling circumstances." *Id.* Compelling circumstances include elements of bad faith, forum shopping, or preemptive racing to the courthouse by the first filer. *Boatmen's First Nat. Bank of Kansas City v. Kansas Pub. Emps. Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995). The Eighth Circuit has instructed that district courts should be on the alert for two specific "red flags" that suggest there are compelling circumstances warranting suspension of the first-filed rule. *Nw. Airlines*, 989 F.2d at 1006. First, is if the party that filed the first suit was on notice that the other party intended to file a lawsuit in short order. Second, is if the first lawsuit was an action for declaratory judgment, which "may be more indicative of a preemptive strike than a suit for damages or equitable relief." *Id.*

In addition to the two red flags identified in *Northwest Airlines v. American Airlines*, courts have considered factors relevant to a motion to transfer pursuant to 28 U.S.C. § 1404(a) to see if those factors indicate compelling circumstances precluding application of the first-filed rule. *See, e.g. Honkamp Krueger Fin. Servs., Inc. v. Fulton*, No. C20-1018-LTS, 2020 WL 8225446, at *3 (N.D. Iowa June 5, 2020). The court in *Terra International, Inc. v. Mississippi Chemical Corporation*,

observed that "the inclusion of these further factors is supported by the view of the Eighth Circuit Court of Appeals that the first-filed rule yields to 'the interests of justice.'" 922 F. Supp. 1334, 1348 (N.D. Iowa 1996), *aff'd,* 119 F.3d 688 (8th Cir. 1997) (quoting *Nw. Airlines, Inc.*, 989 F.2d at 1006). "[I]t would be unjust, and therefore a compelling circumstance, if, for example, the balance of convenience under 28 U.S.C. § 1404(a) showed an extraordinary burden upon the second filer as the result of litigating in the forum of the first-filed action, or if the transfer analysis under § 1404(a) otherwise dictated transfer." *Id.* (quotations omitted). This Court agrees that the propriety of a permanent injunction based on the application of the first-filed rule is necessarily intertwined with the question raised in defendant's motion to transfer, and "a transfer analysis that dictated transfer of this litigation to another forum pursuant to 28 U.S.C. § 1404(a) would constitute compelling circumstances sufficient to overcome application of the first-filed rule." *Id.* at 1348 and 1385.

## 2. *Standard for motion to transfer venue*

Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court considering a § 1404(a) motion must evaluate factors relating to both the parties' convenience and various public-interest considerations. *See Atl. Marine*

*Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). The Eighth Circuit has declined to offer an "exhaustive list of specific factors to consider" in making the transfer decision, but district courts are instructed to weigh any "case-specific factors relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010). Relevant "private interest" factors may include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) access to records and documents; (4) the location where the conduct complained of occurred; and (5) the applicability of each forum state's substantive law. *See Terra Intern., Inc., 119 F.3d at 695–96.* The "public-interest" factors may include (1) judicial economy; (2) the plaintiff's choice of forum; (3) the comparative costs to the parties of litigating in each forum; (4) each party's ability to enforce a judgment; (5) obstacles to a fair trial; (6) conflict of law issues; and (7) the advantages of having a local court determine questions of local law. *Id.* A party requesting transfer under § 1404(a) bears the burden of demonstrating that the transfer is justified. *Atlantic Marine*, 571 U.S. at 63 n.6.

Here, it is undisputed that the above-captioned suit was filed eleven days before the Texas Lawsuit and, normally, this case would take priority.[5] Therefore,

---

[5] Defendants object to personal jurisdiction in the Eastern District of Missouri, and content the Texas Lawsuit should take priority because it was the first case filed where jurisdiction attached. For purposes of Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Transfer, the Court will assume without deciding that there is personal jurisdiction over Defendants in Missouri.

the Court must examine whether there are compelling circumstances that abrogate application of the first-filed rule. The Court will first exam if the two red flags identified in *Northwest Airlines v. American Airlines* are present here. Next the Court will turn to factors relevant to transfer pursuant to § 1404 and take up Defendants' Motion to Transfer Venue.

## A. There Are Compelling Circumstances that Warrant Abrogation of the First-Filed Rule.

In support of their motion for preliminary injunction, Plaintiffs assert that they did not file suit in bad faith, but rather they filed suit as soon as they became aware that Defendant Bundren was "interfering" with TGP's insurance proceeds, "thus impeding settlement of the [Freeman Moss Lawsuit]." (ECF No. 11 at 3). According to Plaintiffs, had Defendant Bundren "been successful in his efforts," he would have upset the payment schedule for the Freeman Moss Lawsuit settlement, and TGP would have incurred devasting penalties, which is why Plaintiffs filed suit when they did. (*Id.*)

The Court does not find that Plaintiffs' characterization of the events is supported by the record. There is no evidence that Defendant Bundren was purposely impeding the settlement agreement in the Freeman Moss Lawsuit. There is no evidence before the Court that Defendant Bundren knew about the settlement and/or its terms. Rather, the Court finds that Defendant Bundren was demanding

payment on past due invoices – invoices that were submitted months earlier and about which he had made several prior inquiries about non-payment.

Further, there is no evidence that prior to filing suit Plaintiffs ever demanded that Defendants stop "interfering" with either the Insurance Policy or the settlement agreement. In fact, there is no evidence that Plaintiffs ever told Defendant Bundren or his firm that they were unhappy with his representation. Plaintiffs never informed BLG or Defendant Bundren they were disputing the amount of the legal bills, or that they did not intend to pay. In short, Plaintiffs never communicated or even hinted to Defendant Bundren or his firm that they were contemplating bringing suit against them.

There is, however, evidence in the record that Plaintiffs TGP and James Hoft were on notice that Defendant Bundren believed TGP and the Hoft Brothers had breached the Retainer Agreement, and that he was demanding immediate payment for over $500,000 on unpaid invoices. In fact, Defendant Bundren made explicit demands for immediate payment on September 24 and 27, 2024. No one responded to these demands. Instead, in the afternoon of September 27, 2024, when faced with immediate demands for payment on the outstanding invoices and the knowledge that proceeds from the Insurance Policy would not cover the Freeman Moss Lawsuit settlement and their legal bills, TGP and James Hoft filed suit against Defendant Bundren and BLG alleging fraudulent billing. The suit was filed with no warning.

Based on the facts in the record, the Court finds Plaintiff did race to the courthouse and ambushed Defendants. Plaintiffs' conduct and the timing of the suit weighs against application of the first-filed rule.

It is also notable that Plaintiffs' suit is for declaratory judgment. In the first paragraph of their initial Complaint, Plaintiffs characterized their suit as an action seeking a declaration that they do not owe Defendants attorney's fees. (ECF No. 1 at 1). Specifically, Plaintiffs allege Defendants did not perform pursuant to the Retainer Agreement and to the extent Defendants did, the work was excessive and unreasonable. Plaintiffs further allege that non-payment would not be a breach of contract and will not cause damage to Defendants. "Nevertheless, Defendants have demanded that their fraudulent invoices for work allegedly and/or excessively performed under the Retainer Agreement be paid." (ECF No. 1 at 5). Plaintiffs request that the Court declare "that they shall not be required, as a matter of law, to pay some or all of the unpaid invoices claimed by Defendants." (*Id.*)

The Court acknowledges that Plaintiffs are bringing claims for damages, which makes the nature of the suit less a red flag. Seeking to recover some or all the attorney's fees that the Insurance Companies paid, Plaintiffs are bringing claims for unfair trade practices under the Texas Business and Commercial Code, for deception, fraud, false pretense, misrepresentation, unfair practices and concealment under the MMPA, and for unjust enrichment, constructive trust and disgorgement

under Texas common law.  Plaintiff have since filed an Amended Complaint to add claims of tortious interference, breach of fiduciary duty, and legal malpractice, which are based primarily on Defendant Bundren's conduct in the Texas Lawsuit. While Plaintiffs are seeking to recover some or all of the $90,000 in legal fees already paid, the Court believes Plaintiff's driving motivation behind this suit is to avoid paying over $500,000 in additional fees.

Considering all the circumstances surrounding the filing of this suit, and most notably the timing, the Court finds there is compelling reason to abrogate the first-filed rule.  The Court now turns to the issue of transfer.

### B. There Are Compelling Circumstances that Weigh in Favor of Transfer.

While the Freeman Moss Lawsuit was filed in Missouri, the above-captioned case has little connection to this state.  None of parties in suit are Missouri citizens. Defendants are both citizens of Texas.  While TGP was organized as a limited liability company in Missouri, its principal place of business is now in Florida.  In fact, TGP started doing business in Florida in 2021, and in 2024, it filed for bankruptcy in Florida.  There is no credible evidence in the record that it is currently doing any business in Missouri.  Further, the sole member of TGP, James Hoft, is a citizen of Florida.

Further, the parties to this suit all agreed that any litigation regarding Defendant Bundren's representation and fees could be brought in Texas.  The

Retainer Agreement has a forum selection clause that provides as follows: "This agreement can be enforceable by any court of competent jurisdiction in Collin County, Texas." While the forum selection clause is permissive, *Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003), it does indicate that the Plaintiffs consented to litigating in Texas. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("Within [the § 1404] framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum."). The Court finds the convenience of the parties weighs in favor of transfer to Texas.

Additionally, there are parties in the Texas Lawsuit that are missing here in Missouri. BLG brought suit against TCP and James Hoft, as well as Joseph Hoft and the Insurance Companies. Although they are not parties to the above-captioned suit, Joseph Hoft and Insurance Companies are key players in the fee dispute. At a minimum, Joseph Hoft and representatives from the Insurance Companies are likely to be witnesses. None of these parties are citizens of Missouri. Joseph Hoft is domiciled in Florida and the insurance companies are citizens of Minnesota, Connecticut, Maryland and Delaware.

Turning to witnesses in this case, Defendants have not identified any non-party witnesses. Plaintiffs have identified the following non-party witnesses, who they contend are located in Missouri: Matt Ampleman, Ed Dowd, John Danforth, who were the plaintiffs' counsel in the Freeman Moss Lawsuit, Peter Dunne, who

23

was the special master, and three state court judges, the Honorables Michael Stelzer, Elizabeth B. Hogan, and Joseph R. Whyte.    Other than saying that Messrs. Ampleman and Dowd were at some of the state court hearings when Defendant Bundren was present, Plaintiffs fail to state why testimony from these witnesses would be relevant to their claims, or even what their testimony would be.    As for the judges, the Court is dubious that Plaintiffs would be successful in obtaining testimony from three sitting judges.    Plaintiffs also identified witnesses who are under the control of TGP, including TGP's administrative assistants, its business consultant, TGP's accountant and bookkeeper.    Again, Plaintiffs fail to state why these witnesses are necessary or even what their testimony would be, but in any event, they are within the control of Plaintiffs.    The Court finds that the convenience of the witnesses favors neither Missouri nor Texas.

The location of documents is a factor to consider when evaluating a motion to transfer.    Neither side has suggested that there are substantial documents or other physical evidence in this case.    Further, documents are easily transmitted electronically.    The Court finds the location of documents does not weight in favor of either venue.

As for the location where the conduct complained of occurred, this suit is essentially a dispute about an attorney-client relationship and fees.    While the underlying suit was filed in Missouri, upon review of the record, the Court finds that

that the bulk of the relevant conduct took place in Texas and other places outside of Missouri.

Plaintiffs state in their Memorandum in Support that "[Defendant] Bundren performed all known work under the [R]etainer [A]greement in Missouri, and that [R]etainer [A]greement did not call for any work to be performed in Texas." (ECF No. 11 at 4). This statement is not true. Defendant Bundren provided a detailed affidavit in which he attests that he attended, although he did not participate in, four hearings in Missouri, but that he performed all other legal work for TGP and the Hoft Brothers outside of Missouri. The events underlying the Freeman Moss Lawsuit took place in Fulton County, Georgia, and Defendant Bundren attests that he conducted investigations and discovery in Georgia, as well as in Texas, Washington, D.C., Virginia, Maryland, Louisiana, and New York. He also attests that he performed legal work at his office in Texas. The Court finds the statements in Defendant Bundren's affidavit credible.

As for the allegedly fraudulent invoices, James Hoft attests that Defendants sent billing statements to Plaintiffs' address in Missouri. (ECF No. 32, Ex. 1 at 2). The Court does not find this statement credible. Defendant Bundren attests that he prepared the invoices in Texas and sent them by email to the Insurance Companies in Minnesota, Connecticut, Maryland, and TCP and Hoft Brothers in Florida. The Court does find this statement credible. Further, the Retainer Agreement provided

that invoices were to be sent via email, which is supported by email exhibits submitted into evidence.

Additionally, Plaintiffs amended their Complaint to add claims for tortious interference, breach of fiduciary duty, and legal malpractice. Plaintiffs allege Defendants induced breaches of the Insurance Policy and the settlement agreement in the Freeman Moss Lawsuit by filing suit in Texas and seeking a TRO. Plaintiffs also allege Defendant Bundren committed malpractice and breached his fiduciary duties when he failed to withdraw from Freeman Moss Lawsuit, filed suit in Texas seeking a TRO, and "acted in a grossly unethical manner in Texas to try to cause financial ruin to his client." (ECF No. 9 at 16). Notably, the alleged conduct that forms the basis of these new claims did not take place in Missouri, but rather it is alleged to have occurred in Texas. In sum, the Court finds the location where the conduct complained of occurred does not support retaining this suit in Missouri, but rather it gravitates in favor of transfer to Texas.

As to the applicability of each forum state's substantive law, the parties agreed that the Retainer Agreement "shall be construed in accordance with the law of the State of Texas." (ECF No. 23, Ex. 4 at 10). Further, in their initial Complaint, Plaintiffs brought one claim under the MMPA, but the remainder of their claims are alleged to be under Texas law. Plaintiff did amend their Complaint to add three claims under Missouri common law. But in light of the language in the Retainer

Agreement, the Court finds that on the whole, this factor weighs in favor of transfer to Texas.

The Court now turns to the public interest factors, which include the following: judicial economy; the plaintiff's choice of forum; the comparative costs to the parties of litigating in each forum; each party's ability to enforce a judgment; obstacles to a fair trial; conflict of law issues; and the advantages of having a local court determine questions of local law. *Terra Intern., Inc., 119 F.3d at 695–96.* Setting aside the Plaintiffs' choice of forum, the parties do not address explicitly the public interest factors. The Court finds that the factors are neutral for the most part. The Court does note that currently the Eastern District of Missouri is operating with only four active district judges and there are four vacancies, while the Eastern District of Texas has no vacancies. As for Plaintiffs' choice of forum, as discussed above, Plaintiff filing suit here in Missouri was not done in good faith and, therefore, Plaintiffs' choice of forum is entitled to little weight. Taken together, the public interest factors weigh slightly in favor of transfer.

After weighing the § 1404(a) factors and considering all the circumstances leading up to this suit and the Texas Lawsuit, the Court finds that Defendants have met the substantial burden of demonstrating that the balance weighs in favor of transferring this action to the United States District Court for the Eastern District of Texas.

### IV.    Conclusion

In sum, the Court finds that there are compelling circumstances that warrant abrogation of the first-filed rule.  In light of this, Plaintiffs' choice of venue is not controlling in this case.  Further, the Court finds after weighing the § 1404(a) factors that this case should be transferred to the United States District Court for the Eastern District of Texas.  The Court grants Defendants' motion to transfer.  Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss are denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Bundren Law Group PLLC and William Charles Bundren's Motion to Transfer to the Eastern District of Texas is **GRANTED**.  Defendants' alternative Motion to Dismiss is **DENIED as moot**. [ECF No. 19]

**IT IS FURTHER ORDERED** that Plaintiffs James Hoft and TGP Communications LLC's Motion for Preliminary Injunction is **DENIED as moot.** [ECF No. 11]

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1404, the Clerk of Court shall transfer this case to the United States District Court for the Eastern District of Texas.

The Court shall issue a separate Order of Transfer.

Dated this 14th  day of July, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE